IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PATRICIA ANN MILLER,

        **Plaintiff,**

  v.                                 Civil Action 2:20-cv-05502
                                        Judge James L. Graham
                                        Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Patricia Ann Miller, brings this action pro se under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

    I.      BACKGROUND

Plaintiff filed her application for DIB on January 2, 2018 and SSI on April 11, 2018, alleging disability beginning February 18, 2017, due to chronic pain, chronic obstructive pulmonary disease ("COPD"), osteoarthritis nerve entrapment, low back pain, degenerative disc disease, anemia, diverticulitis, carpal tunnel, and a heart murmur. (Tr. 236–48, 274). After her applications were denied initially and on reconsideration, an Administrative Law Judge (the "ALJ") held a hearing. (Tr. 36–62). On November 19, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 16–35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed this action pro se, seeking a review of the Commissioner's decision (Doc. 1).

The Commissioner filed the administrative record on April 29, 2021 (Doc. 15). The matter has been briefed and is ripe for consideration. (Docs. 21, 23, 26). In addition, Plaintiff submitted two letters to the Court. (Docs. 27, 28).

### A. Relevant Statements

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony:

> [Plaintiff] testified that she is unable to work because she suffers from constant pain in her feet, which feel as though they are on fire. She said that she could stand for no more than four minutes before her feet begin to hurt and that sitting does not relieve the pain. [Plaintiff] also alleged that at time she uses a cane depending on her level of pain, the distance she is walking, or the length of time she needs to stand. In addition, [Plaintiff] alleged that she experiences stomach pain due to diverticulitis. [Plaintiff] also endorsed memory loss and said that she is unable to breathe well when the weather changes. Finally, [Plaintiff] alleged that she has pain in her fingers, which hinders her concentration.
>
> In her written account, [Plaintiff] alleged that, due to pain in her feet, back, and stomach, she is unable to focus, stand, or sit for long periods (Exhibit B4E/5). [Plaintiff] also reported that she could walk for just ten to fifteen minutes before needing to stop and rest (Exhibit B4E/6). In addition, [Plaintiff] reported limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, memory, completing tasks, concentration, using her hands, and getting along with others. She acknowledged, however, that she is capable of preparing complete meals, paying bills, counting change, handling a savings account, and using a checkbook/money order, and shopping for groceries (Exhibit B4E/3).

(Tr. 25).

### B. Relevant Medical Evidence

The ALJ usefully summarized Plaintiff's medical records and symptoms related to her severe physical impairments:

> [Plaintiff] has been diagnosed with invertebral disc degeneration of the lumbar region (Exhibit B12F/14 & 19, & B17F/9 & 23). An MRI of her lumbar spine in November 2015 showed moderate L5-S1 degenerative disc disease and multilevel neural foraminal narrowing, but no acute abnormality of the lumbar spine and no spinal canal stenosis (Exhibit B12F/25). Nonetheless, the images displayed lower

> lumbar facet arthropathy with fluid signal in the L4-5 facet joints suggesting inflammatory arthritis.
>
> From January 2017 to June 2018, [Plaintiff] routinely reported a painful deformity to her great toe region and pain throughout her feet and ankles (Exhibits B6F/4, B11F/2 & 4, & B19F/4, 6, 8, 10, 12, & 15). She also indicated that her pain was associated with activity. However, while [Plaintiff] noted that self-care, soaks, and rest with shoe gear changes were not effective, she acknowledged that first metatarsal phalangeal joint and ankle bilateral steroid injections were helpful. In March 2018, she also received custom molded, fully functional orthotic appliances and reported improvement since her last visit with her previous treatments (Exhibit B19F/14).
>
> In April 2017, [Plaintiff] presented to the emergency room with left knee pain after falling a few weeks earlier (Exhibit B3F/2, 7, & 11). An x-ray of the left knee showed tricompartmental degenerative changes, including moderate medial compartment narrowing (Exhibit B3F/9, 12, & 30). However, there was no fracture or evidence of knee effusion. [Plaintiff] reported continued pain in her left knee in July 2017, noting that she had experienced pain sporadically since 2014, but it had been worse since her fall earlier in 2017 (Exhibit B5F/3). X-rays in July 2017 show tricompartmental degenerative changes with joint space narrowing and marginal osteophyte formation noting severe medial osteoarthritis (Exhibit B5F/4 & 25).
>
> [Plaintiff] has been diagnosed with chronic obstructive pulmonary disease, but records generally describe this as stable (Exhibits B10F/3, 5, 8, 11, 14, 17, 20, 23, 26, 28, 31, & 34, B13F/31 & 36, & B14F/4). In October 2018, [Plaintiff] did present to the emergency room, complaining of chest pain for the previous week (Exhibit B13F/10). On examination the following day, [Plaintiff] reported that her pain improved, although she was still concerned about sporadic pain with exertion. Other than this, treatment records consistently describe [Plaintiff]'s chronic obstructive pulmonary disease as stable[.]
>
> In May 2019 [Plaintiff] reported pain in her neck, arms, right shoulder, mid and lower back, legs, knees, right hip and feet (Exhibit B16F/2). She was using a cane to ambulate. Nevertheless, [Plaintiff] acknowledged that her medications helped with the pain and her quality of life. She further stated that she could perform activities of daily living. In addition, during a psychological evaluation performed in February 2018, [Plaintiff] acknowledged that she was capable of preparing meals, driving, running errands, and exercising (Exhibit B9F/6).

(Tr. 26).

C. **The ALJ's Decision**

In her decision, the ALJ found that Plaintiff met insured status requirements through March

3

31, 2021, and she did engage in substantial gainful activity after February 18, 2017, but there is insufficient evidence in the record to determine whether this was an unsuccessful work attempt. (Tr. 22). The ALJ found that Plaintiff suffers from the following severe impairments: osteoarthritis, chronic obstructive pulmonary disease, degenerative disc disease, and degenerative joint disease of the left knee. (*Id.*). The ALJ also found that Plaintiff has the following non-severe impairments: diverticulitis, obesity, depression, and post-traumatic stress disorder (PTSD). (*Id.*). Because Plaintiff's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the Plaintiff's ability to do basic work activities, they are nonsevere. (Tr. 23). Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 24).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. [Plaintiff] requires the use of an ergonomic wrist support when typing, and she needs to have the option to use a cane for ambulation.

(Tr. 25).

After reviewing the hearing testimony and medical record, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (Tr. 26). The ALJ elaborated on this conclusion:

> [P]hysical examinations failed to reveal any significant findings to indicate any greater limitations than those provided in the residual functional capacity. The residual functional capacity incorporates all of the limitations that are reasonably supported by the evidence. [Plaintiff]'s complaints concerning the pain and symptoms associated with her osteoarthritis, degenerative disc disease, and

4

> degenerative joint disease were considered in reducing her to sedentary work with additional postural limitations, and the inclusion of the option of using a cane for ambulation. Furthermore, her subjective complaints regarding pain in her fingers were further considered when requiring that she be permitted to use an ergonomic wrist support when typing.

(Tr. 26–27).

The ALJ then turned to the opinion evidence:

> State agency examiners evaluated [Plaintiff] both initially and on reconsideration (Exhibits B3A, B5A, & B6A). At the initial level, the State agency found that claimant could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk two hours; and sit about six hours in an eight-hour workday (Exhibit B3A/12-13). The State agency also found that [Plaintiff] would be limited to occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; and occasionally stooping, kneeling, crouching, and crawling (Exhibit B3A/13). These findings were generally affirmed on reconsideration; however, on reconsideration [Plaintiff] was further limited to using an ergonomic wrist support when typing (Exhibits B5A/15-16 & B6A/15-16). I found the opinion of the State agency on reconsideration to be persuasive because it was fully supported and consistent with the medical evidence of record and [Plaintiff]'s functional limitations. While these doctors did not examine [Plaintiff] or have the benefit of the full hearing level record, their findings are consistent with a range of examinations and [Plaintiff]'s overall course of care. These examiners offered a thorough and detailed recitation of the evidence available at the time with citations to the objective record and ample consideration of [Plaintiff]'s subjective complaints. Finally, these examiners have knowledge of Agency standards and definitions, adding elements of consistency, supportability, and reliability to the findings.

> In March 2014, John S. Reece, Psy.D., evaluated [Plaintiff] and opined that she was able to follow directions, her concentration was satisfactory, she had minimal history of sustained relationships, and she had deficits in dealing with workplace stress due to depression (Exhibit B1F/4-5). This opinion is less persuasive because it is vague and it was rendered well before the relevant time period, but I do note that it is generally consistent with a finding that [Plaintiff] does not have a severe mental health impairment.

> Emily Farrin, M.D., evaluated [Plaintiff] in April 2014 and concluded that with regards to her lower back, she could lift no more than 50 pounds and should not more than occasionally bend more than 90 degrees. Dr. Farrin suggested that [Plaintiff] type ergonomically with wrist supports. Dr. Farrin also noted that [Plaintiff] reported pain out of proportion with the physical examination findings and imaging. She indicated that [Plaintiff]'s behavior also appeared to vary between the examination room and the parking lot, when [Plaintiff] did not know she was

5

being observed. This opinion is of limited persuasive value because it was rendered several years before the relevant time period, and it is not fully consistent with the later medical records that reflect additional limitations.

In February 2018, Eric Anderson, Ph.D., opined that [Plaintiff] could understand, remember, and carry out one-step/simple instructions, but would find it increasingly difficult to remember more complex instructions (Exhibit B9F/9). Dr. Anderson also opined that while [Plaintiff]'s attention and concentration were intact at a basic level, her depression and intrusive thoughts would likely hinder her ability to maintain attention and to persist cognitively. Dr. Anderson indicated that consideration should be given to limiting [Plaintiff]'s involvement with hazardous activities, and that her depression would cause her significant problems interacting appropriately with others and dealing with normal work pressures (Exhibit B9F/9-10). I am not persuaded by this opinion, as it appears to be largely based on [Plaintiff]'s subjective self-reporting at her consultative examination, and is not consistent with treatment records, which reflect no real treatment or limitations from mental health impairments. A range of mental status examinations showed that [Plaintiff] denied experiencing memory loss, displayed normal intelligence and cognition, her judgment and insight was intact, and her immediate, recent, and remote memory was intact (Exhibits B12F/18 & B17F/8, 21, 39, & 41-42).

(Tr. 27–28).

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a customer complaint clerk. (Tr. 28–29). She therefore found Plaintiff not disabled under the Social Security Act. (Tr. 29).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. DISCUSSION

Because Plaintiff is proceeding pro se and does not identify any specific errors with the ALJ decision currently before the Court, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings.

The Commissioner seeks an Order affirming the ALJ's decision. The Commissioner argues that in reaching her decision that Plaintiff was not disabled, the ALJ properly determined that Plaintiff had the residual functional capacity to perform a range of sedentary exertional work despite her impairments. In addition, the Commissioner asserts that the ALJ reasonably found Plaintiff's mental impairments of depression and post-traumatic stress disorder (PTSD) were nonsevere. According to the Commissioner, the ALJ also reasonably took into account Plaintiff's reported daily activities. (Doc. 23). Upon review of the record, the Undersigned agrees with the Commissioner.

#### A. Substantial Evidence

In reaching her decision that Plaintiff was not disabled, the ALJ determined that Plaintiff had the residual functional capacity to perform a range of sedentary work. (Tr. 25). A claimant's

7

residual functional capacity assessment is the most she can do despite her impairments. 20 C.F.R. § 404.1545(a). The RFC is an administrative finding reserved to the Commissioner; it is not a medical opinion. As the finder of fact, the ALJ has the exclusive responsibility for formulating the RFC. 20 C.F.R. § 404.1546(c).

Here, the ALJ determined that Plaintiff had severe impairments, including: Osteoarthritis, COPD, Degenerative disc disease, and Degenerative joint disease of the left knee. (Tr. 22). Despite these impairments, the ALJ found that Plaintiff still could perform sedentary work that involved occasional stooping, kneeling, crouching, crawling, climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; use of an ergonomic wrist support when typing; and use of a cane for ambulation. (Tr. 25). In coming to this conclusion, the ALJ considered the medical evidence, the state agency reviewers' opinions, and Plaintiff's daily activities.

1. *The Medical Records*

As noted, Plaintiff has several impairments. And the ALJ considered medical records about each. For instance, with respect to Plaintiff's back condition, a November 2015 lumbar spine MRI showed moderate L5-S1 degenerative disc disease and multilevel neural foraminal narrowing, but no acute abnormality of the lumbar spine, no spinal canal stenosis, and lumbar facet arthropathy with fluid signal in the L4-5 facet joins suggesting inflammatory arthritis. (*See, e.g.*, Tr. 673). Despite Plaintiff's complaints of pain in her feet and ankles, she acknowledged that the injections were helpful. (Tr. 887, 889, 891, 893, 895, 898). She also received custom molded fully functional orthotic appliances and reported improvement. (*See* Tr. 897). An April 2017 x-ray of Plaintiff's left knee showed tricompartmental degenerative changes, including moderate medial compartment narrowing but no fracture or evidence of knee effusion. (Tr. 381, 384, 402).

July 2017 left knee x-rays showed tricompartmental degenerative changes with joint space narrowing and marginal osteophyte formation noting several medial osteoarthritis. (Tr. 458, 479).

As for Plaintiff's COPD, records generally describe Plaintiff's condition as stable. (Tr. 592, 594, 597, 600, 603, 606, 609, 612, 617, 620, 623, 708, 713; 770). There is one exception. In October 2018, Plaintiff presented to the emergency room for complaints of chest pain that started the previous week. (Tr. 687). By the following day, however, she reported improvement. Otherwise, the record generally describes Plaintiff's COPD as controlled.

Plaintiff was also treated for diverticulitis, which the ALJ found to be nonsevere. (Tr. 22). This, too, has record support. A May 2017 abdominal CT scan showed acute diverticulitis descending colon near the junction with the sigmoid colon. (Tr. 413–14, 419, 448, 538, 542, 565). Plaintiff was afebrile with a normal white count and lactic acid and was sent home with oral antibiotics and analgesics. (Tr. 414). A few months later, in August 2017, Plaintiff was admitted for abdominal pain, which improved. By the next month, she denied abdominal bloating, distension, constipation, or diarrhea. (Tr. 593). Notably, Plaintiff has not sought nor required any further treatment for her diverticulitis.

The ALJ also addressed Plaintiff's mental impairments, finding her depression and post-traumatic stress disorder (PTSD) to be nonsevere. (Tr. 23–24). The medical records show that Plaintiff consistently denied experiencing memory loss; she displayed normal intelligence and cognition; and she had intact memory. (Tr. 666, 825, 838, 856, 858). Similarly, a psychological evaluation showed Plaintiff's memory functions appeared intact. (Tr. 585). And during examinations, Plaintiff was pleasant and cooperative with normal mood, affect, and manner. (Tr. 360, 365, 457, 464–65, 467, 474, 584, 657, 666, 687–88, 690, 716, 754, 760, 826, 839, 848, 858).

  2. *State Agency Reviewers*

The ALJ also considered the opinions of the state agency physicians. Based on their review of the evidence at the time, they determined that Plaintiff could perform a range of light work despite her impairments. (Tr. 94–109, 111–130, 131–150). Specifically, the state agency physicians found that Plaintiff could perform sedentary work despite her impairments. (Tr. 105–06, 125–26, 145–46). At the initial level, the state agency doctor, based on his review of the evidence, opined that Plaintiff could occasionally lift and/ or carry ten pounds; frequently lift and/ or carry less than ten pounds; stand and/ or walk two hours; sit about six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. (Tr. 105–06). Upon reconsideration, the state agency physician generally affirmed the initial findings and further limited Plaintiff to using an ergonomic wrist support when typing. (Tr. 125–26, 145–46). The ALJ, consistent with the state agency assessments, accommodated Plaintiff's upper extremity impairments and found that Plaintiff should perform sedentary work and use an ergonomic wrist support when typing. (Tr. 25, 126, 146). The ALJ found the assessments persuasive because they were supported by and consistent with the medical evidence of record and Plaintiff's course of care. (Tr. 27); 20 C.F.R. § 404.1520c.

As reviewing doctors, they are familiar with the Social Security Administration's disability programs and are considered experts in the field of disability evaluation. *See* 20 C.F.R. § 404.1513a(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). In addition to being disability experts, the state agency reviewing doctors are also known as neutral sources. *See Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("[T]he reviewing physicians . . . have the

strongest claims to neutrality."). The ALJ reasonably relied on the state agency assessments, which serve as substantial evidence supporting the residual functional capacity finding.

### 3. *Daily Activities*

The ALJ also reasonably took into account Plaintiff's reported daily activities. (Tr. 26). Plaintiff was capable of preparing meals, driving, running errands, and exercising. (Tr. 584). She could also pay bills, count change, handle a savings account, and use a checkbook/money order, and shop for groceries. (Tr. 25, 287). While Plaintiff may not have engaged vigorously in her activities, an ability to function in these ways may be considered when assessing disability. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 846 (6th Cir. 2005) (finding substantial evidence supported non-disability conclusion where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and "could engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (holding that a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability).

In challenging the ALJ's decision, Plaintiff does not contest the evidence described above, but instead attacks some of the observations of the medical providers in the record regarding her neat personal appearance and her ability to get into her car without trouble. (Doc. 21 at 1–2; Tr. 366). Notably, the ALJ did not discuss these observations in her November 2019 decision. Further, even without these additional observations, the ALJ's residual functional capacity is well-supported. In light of the above evidence, specifically the objective medical evidence, the medical opinions of two state agency physicians, and Plaintiff's reported activities, the ALJ reasonably found that Plaintiff could perform a range of sedentary work. In sum, substantial evidence supports

11

the decision. The Undersigned has considered Plaintiff's submissions to the Court, but nothing in the filings undermines the conclusion.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: January 11, 2022          /s/ Kimberly A. Jolson
                       KIMBERLY A. JOLSON
                       UNITED STATES MAGISTRATE JUDGE